IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LUKE HAM,

    Plaintiff,

vs.                                                                                 1:23-cv-01057-DHU-JFR

CARMAX AUTO SUPERSTORES, INC.
*doing business as* CARMAX and
SAFECO INSURANCE COMPANY
OF AMERICA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On December 4, 2023, CarMax Auto Superstores, Inc. ("CarMax") and Safeco Insurance Company of America's ("Safeco") (collectively "Defendants") filed a Motion to Stay Litigation and Compel Arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, to compel Luke Ham ("Plaintiff") to arbitrate claims that he asserted against Defendants in connection with a vehicle purchase. Doc. 9. Having reviewed the parties' pleadings, Docs. 12, 18, and the applicable law, the Court finds that Defendants' motion should be **GRANTED** and that this matter is **STAYED**.

### I. BACKGROUND

Around July 2022, Plaintiff purchased a used 2019 Audi from CarMax. Plaintiff purchased the vehicle based on representations by CarMax that the vehicle was not involved in prior accidents. However, when Plaintiff attempted to trade-in the vehicle about a year later, CarMax disclosed for the first time that the vehicle had been in a car wreck and offered him a low trade-in value. *See generally* Compl., Doc. 1-3. On August 30, 2023, Plaintiff filed a three-count complaint in New Mexico state court for fraud (Count I), violations of the New Mexico Unfair Practices Act

1

("UPA"), N.M. Stat. Ann. §§ 57–12–22 to 57–12–26 (1953), (Count II), and negligence (Count III). *See id.*

### A. The Arbitration Agreement

On November 27, 2023, CarMax filed a notice of removal to this Court. *See* Doc. 1. Soon after, Defendants filed the instant motion to compel arbitration and stay the litigation. *See* Doc. 9. According to Defendants, Plaintiff signed arbitration agreements as part of the vehicle purchase.

On August 3, 2022, Plaintiff signed an Arbitration Agreement contained in the Retail Installment Contract as part of the vehicle's financing.[1] *See* Doc. 9-2.; 9-1 at 3. The relevant provisions are depicted below as Plaintiff would have encountered them:

> **ARBITRATION PROVISION**: This Arbitration Provision describes when and how a Claim (defined below) shall be arbitrated … **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision**.
>
> …
>
> **IF YOU OR WE CHOOSE ARBITRATION, THEN ARBITRATION SHALL BE MANDATORY, AND:**
>
> **ANY CLAIM WILL BE DECIDED BY ARBITARTION AND NOT IN COURT OR BY A JURY TRIAL[.]**
>
> …
>
> **a. What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to the sale and/or this Contract or the Vehicle and related goods and services that are the subject of the purchase and this Contract or the collection or servicing of this Contract, including but not limited to:
>
> - Initial claims, counterclaims, cross-claims and third party claims;
> - Disputes based on contract, tort, consumer rights, fraud or other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
> - Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and

---

[1] Plaintiff does not dispute that he signed the agreements.

- *Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract*, subject to paragraph (f) of this Arbitration Provision.

Doc. 9-2 at 3 (emphases added) (alteration added). This latter provision concerning "[d]isputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract" will be referred to in this Memorandum Opinion and Order as the "Delegation Clause."

The Arbitration Agreement also has a clause about choosing an arbitrator, explaining that if Plaintiff initiated the arbitration proceeding, he could choose an arbitrator from either the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediation Services, Inc. ("JAMS").

Finally, the Arbitration Agreement also has a clause about paying for the arbitration which states in full that:

> **e. Paying for Arbitration**. Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. The fees and costs of any arbitration, including any initial filing fees, shall be paid in accordance with the rules and procedures of the Administrator. Each party must pay the expenses of that party's attorney's, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or the Administrator's rules, procedures, or standards provide otherwise.

Doc. 9-2 at 3.

### B. The Parties' Arguments

Defendants seek to enforce the Delegation Clause and all other parts of the Arbitration Agreement. As Defendants argue, through the Delegation Clause, "the parties have agreed not only to arbitrate the merits of their dispute, but to submit to the arbitrator all questions concerning 'the validity, enforceability, and arbitrability or scope of' the arbitration provision." Doc. 9 at n.2 (quoting the Delegation Clause). Defendants argue that this type of delegation "is valid and will be upheld." *Id*. (citing *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) ("When

3

the parties clearly and unmistakably agreed to arbitrate arbitrability, all questions of arbitrability—including the question of whether claims fall within the scope of the agreement to arbitrate—had to be resolved by the arbitrator.").

Plaintiff opposes the motion. He argues that the Arbitration Agreement is "perplexing, ambiguous, and unenforceable." Doc. 12 at 2. First, Plaintiff argues that it is unclear what filing fee he would pay if he initiated arbitration. He notes that under JAMS rules, a litigant is required to pay a $250 fee, while under AAA rules there is a $200 fee. Plaintiff interprets the Arbitration Agreement to mean that "arbitration is split equally." Doc. 12 at 4. Plaintiff asks "[h]ow would a consumer know what he would owe," given that "arbitration is split equally, while JAMS only requires $250 and AAA only requires $200[?]" *Id*.

Second, Plaintiff argues that the Arbitration Agreement "requires Plaintiff to pay attorney fees, win or lose." *Id*. at 6. He states that "even the most sophisticated consumer could not know if he would be able to recover attorney fees … and if so, if he could recover the fees and costs if he won, or any other fees and costs of the arbitration." *Id*. at 7. He also argues the Arbitration Agreement undermines or restricts his ability to seek actual damages under the UPA. *See* N.M. Stat. Ann. § 57–12–10(B).

Third, Plaintiff raises the "effective vindication doctrine." That doctrine is an exception to the FAA that permits a court to invalidate, on public policy grounds, arbitration agreements that "'operat[e] ... as a prospective waiver of a party's *right to pursue* statutory remedies.'" *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376–77 (10th Cir. 2016) (quoting *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235, 133 S. Ct. 2304, 2310, 186 L. Ed. 2d 417 (2013)). This exception "cover[s] a provision in an arbitration agreement forbidding the assertion of certain statutory rights" and it "would perhaps cover filing and administrative fees attached to arbitration that are so high as to

4

make access to the forum impracticable." *Italian Colors*, 570 U.S. at 236. Plaintiff argues that "stripping [him] of … statutory rights under the UPA, namely the fee-shifting provision and damages provisions, falls squarely with[in] the effective vindication doctrine." Doc. 12 at 8.

In reply, Defendants argue that the Arbitration Agreement is not ambiguous. They say that the agreement clearly defines "how filing fees are to be paid and when attorney's fees and litigation costs may be recovered" and they provide a point-by-point explanation of how fees and costs operate under the Arbitration Agreement. Doc. 18. Regarding the effective vindication doctrine, Defendants argue that it is inapplicable because it applies to federal rights only, not state rights like New Mexico's UPA. *See id*. at 6–7 (citing *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 936 (9th Cir. 2013) ("The 'effective vindication' exception, which permits the invalidation of an arbitration agreement when arbitration would prevent the 'effective vindication' of a federal statute, does not extend to state statutes.")).

## II. LEGAL STANDARD

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991). The FAA has created a body of federal substantive law establishing and regulating the duty to enforce arbitration agreements. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S. Ct. 3346, 3353, 87 L. Ed. 2d 444 (1985). A reviewing court must interpret arbitration clauses liberally and all doubts must be resolved in favor of arbitration. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 798 (10th Cir. 1995).

The FAA's "primary substantive provision," is 9 U.S.C. § 2. *Belnap*, 844 F.3d at 1280. That section makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A] party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68, 130 S. Ct. 2772, 2776, 177 L. Ed. 2d 403 (2010) (quoting 9 U.S.C. § 3). "[A] party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Id.* (quoting 9 U.S.C. § 4). A court may order the parties to arbitrate "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4.

Arbitration agreements, however, may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr.*, 561 U.S. at 68 (quoting *Dr.'s Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). In enacting the FAA, Congress did not intend to force parties to arbitrate in the absence of an agreement, and therefore the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286–87 (10th Cir. 1997). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002).

Courts generally apply state law on the formation of contracts to determine whether a party agreed to arbitrate a dispute. *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th

Cir. 2013). In applying state law, a court may not construe an arbitration agreement differently from how it otherwise construes non-arbitration agreements under state law. *Seatex*, 126 F.3d at 1287. Courts generally will enforce agreements according to their terms, but arbitration under the FAA "is a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 109 S. Ct. 1248, 1256, 103 L. Ed. 2d 488 (1989). "[C]ourts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract." *Gilmer*, 500 U.S. at 33 (internal quotation marks omitted).

When the making of an arbitration agreement is at issue, the court must proceed to the trial of that issue. *Seatex*, 126 F.3d at 1283. Procedurally, a motion to compel is similar to summary judgment practice:

> the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement … if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement or the failure to comply therewith.

*BOSC, Inc. v. Bd. of Cty. Comm'rs*, 853 F.3d 1165, 1177 (10th Cir. 2017) (quoting *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The court views the facts in the light most favorable to the party opposing arbitration. *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). When there are no genuine issues of material fact regarding the agreement to arbitrate, the court may decide the arbitration issues as a matter of law. *BOSC,* 853 F.3d at 1177. When material issues of fact exist, a trial on the existence of the agreement is warranted (by jury, if requested by a party). *Id.*

### III. DISCUSSION

#### A. The Arbitration Agreement Delegates Disputes about the Validity, Enforceability, Arbitrability or Scope of the Agreement to the Arbitrator.

In this case the parties do not dispute that a contract (the Arbitration Agreement) was formed between Plaintiff and Defendants. Plaintiff does not deny that he signed the Arbitration Agreement. Nor does he argue that an offer, an acceptance, consideration, and mutual assent under state law were lacking. *See Garcia v. Middle Rio Grande Conservancy Dist.,* 121 N.M. 728, 731, 918 P.2d 7(N.M. 1996) (discussing the elements of contract formation). Therefore, there are no issues with contract formation, which sets this case apart from those where a plaintiff challenges contract formation. *See Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1106–07 (10th Cir. 2020) (holding that the plaintiff "raised an issue of formation" where she alleged that she and class members did not read or accept an arbitration agreement.)[2] Finally, Plaintiff does not raise "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Ctr.*, 561 U.S. at 68.

Instead, Plaintiff's arguments are predicated on fees and recoverable litigation costs, which he claims are "perplexing, ambiguous, and unenforceable" under the Arbitration Agreement. Doc. 12 at 2. For the reasons explained below, the Court agrees with Defendants that the Delegation Clause gives the arbitrator exclusive authority to resolve disputes about whether fees and recoverable litigation expenses are ambiguous or unenforceable under the Arbitration Agreement. Consequently, the Court does not address or decide whether the disputed language is perplexing, ambiguous, or unenforceable, as those matters are exclusively for the arbitrator to decide.

---

[2] In *Fedor* the Tenth Circuit held that contract formation is always an issue for the court to decide, notwithstanding the presence of a delegation clause. 976 F.3d at 1105–06.

The Court starts with the Delegation Clause in this case. In *Rent-A-Ctr.*, the Supreme Court explained that a "delegation provision is an agreement to arbitrate threshold issues concerning the arbitration agreement" and "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."[3] 561 U.S. 63, 68–69. The Supreme Court further explained that "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *Fedor*, 976 F.3d at 1106 (quoting *Rent-A-Ctr.*, 561 U.S. at 69 n.1).

Here, Defendants seek to enforce the Delegation Clause. As the Supreme Court has explained, if a party "seeks to enforce" a delegation clause, the opposing party must "challenge[] the delegation provision specifically"; otherwise, the court "must treat [the delegation clause] as valid" and "enforce it" under the FAA, "leaving any challenge to the validity of the Agreement as a whole for the arbitrator." *Rent-A-Ctr.*, 561 U.S. at 72. However, "if a party ... fails to specifically challenge a delegation clause ..., then the delegation clause will typically require a court to compel arbitration and allow an arbitrator to determine whether the arbitration contract was indeed valid." *Fedor*, 976 F.3d at 1105 (citing *Rent-A-Ctr.*, at 72); s*ee also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1029 (9th Cir. 2022) ("If there is no such challenge [to a delegation clause]—or if such a challenge fails—the court must send to the arbitrator any other challenges, including

---

[3] "Arbitrability" includes issues such as the "validity, scope, or enforcement of an arbitration contract[.]" *Fedor*, 976 F.3d at 1105 (citing *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 298, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010)).

9

challenges to the validity of the contract as a whole.") (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).

Although Plaintiff argues in response to the motion to compel that the issues of fees and recoverable costs are perplexing, Plaintiff never challenged the Delegation Clause itself. Because Plaintiff did not challenge the Delegation Clause, this case resembles *Rent-A-Ctr.*, where the Supreme Court "required the respondent to arbitrate his claims because he failed to specifically challenge the delegation clause within the relevant arbitration agreement." *Fedor*, 976 F.3d at 1107 (citing *Rent-A-Ctr.*, 561 U.S. at 72). Without a challenge to contract formation or to the Delegation Clause, the Court concludes that the parties clearly and unmistakably agreed to arbitrate all disputes about the "validity, enforceability, arbitrability or scope" of the Arbitration Agreement. Doc. 9-2 at 3.

Finally, the Court notes that the Tenth Circuit has upheld delegation clauses that used sufficiently similar language to the Delegation Clause here. *See Brayman v. KeyPoint Gov. Sols., Inc.*, 83 F.4th 823, 829–30 (10th Cir. 2023) (upholding a delegation clause, stating that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement"); *Belnap*, 844 F.3d at 1281 (upholding a delegation clause by stating that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted and ruled on by the Arbitrator").

In summary, based on the Delegation Clause in the Arbitration Agreement between Plaintiff and Defendants, disputes about the validity, enforceability, arbitrability, or scope of the

Arbitration Agreement must be decided by the arbitrator, not the Court. Because there is no issue of contract formation, the gateway issue of arbitrability must be submitted to the arbitrator.

### B. The Effective Vindication Doctrine is Inapplicable.

The Court briefly addresses Plaintiff's effective vindication arguments. "[A]n arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and accessible alternative forum." *Nesbitt*, 811 F.3d at 377 (citation omitted). "The key question is whether the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090, 1098 (10th Cir. 2023) (citation omitted). The effective vindication exception "'would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights,' and 'would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable.'" *Nesbitt*, 811 F.3d at 377 (quoting *Italian Colors*, 570 U.S. at 236). The party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive ... bears the burden of showing the likelihood of incurring such costs." *Nesbitt*, 811 F.3d at 378 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000)).

Plaintiff argues that the Arbitration Agreement prevents him from effectively vindicating his statutory rights under New Mexico's UPA. First, as for filing fees, he asserts that the Arbitration Agreement requires that the "arbitration is split equally," and that the filing fee is unclear because JAMS requires a $250 filing fee while the AAA requires a $200 filing fee. Doc. 12 at 6. Second, Plaintiff states that the Arbitration Agreement requires him "to pay attorney fees, win or lose," *id*. at 6, whereas the UPA, in contrast, contains a fee-shifting provision to the prevailing party. *See* N.M. Stat. Ann. § 57–12–10(C) ("The court shall award attorney fees and

costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails.") Third, Plaintiff argues the Arbitration Agreement undermines his ability to seek actual damages under the UPA. *See* N.M. Stat. Ann. § 57–12–10(B).

However, there are at least two reasons why the effective vindication exception to the FAA is inapplicable. First, although the Tenth Circuit's position is unknown, other courts have held that the exception "does not extend to state statutes." *Ferguson*, 733 F.3d at 936 (citing *Italian Colors Rest.*, 570 U.S. at 252 ("Our effective-vindication rule comes into play only when the FAA is alleged to conflict with another *federal* law.") (Kagan, J., dissenting)); *Keyes v. Ayco Co., L.P.*, No. 117CV00955BKSDJS, 2018 WL 6674292, at *6 (N.D.N.Y. Dec. 19, 2018) ("Plaintiff does not cite to any authority, nor is the Court aware of any, declining to enforce an arbitration clause as a matter of federal law on the ground that the arbitral rules burden the plaintiff's ability to vindicate his or her state-law claims.") (internal quotation marks omitted); *Frankel v. Citicorp Ins. Servs., Inc.*, No. 11-CV-2293 NGG RER, 2014 WL 10518555, at *10 (E.D.N.Y. Aug. 12, 2014), *report and recommendation adopted*, No. 11-CV-2293 NGG RER, 2015 WL 6021534, at *2 (E.D.N.Y. Oct. 14, 2015) ("[T]he...vindication [of rights] doctrine is inapplicable to state statutory remedies.").

Second, even if the doctrine did apply to state statutory remedies, Plaintiff has not provided a sworn declaration or affidavit explaining that the burdens imposed by arbitration are so onerous as to make arbitration an inadequate forum. This case therefore differs from *Nesbitt*, the case that Plaintiff relies on, where the plaintiff established by affidavit that she would likely incur between $2,320.50 and $12,487.50 costs simply paying for the arbitrator's time and that she could not afford these costs. 811 F.3d at 375. Plaintiff has not submitted any such evidence, even though a motion to compel arbitration resembles summary judgment practice. *See BOSC*, 853 F.3d at 1177.

In such circumstances, courts have held that, without an affidavit or similar evidence describing how arbitration costs prevent a litigant from vindicating their rights, a plaintiff fails to meet his evidentiary burden on the issue. *See Torgerson v. LCC Int'l, Inc.*, 227 F. Supp. 3d 1224, 1232–33 (D. Kan. 2017) (collecting cases). In summary, Plaintiff has failed to show that the effective vindication doctrine is applicable.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Stay Litigation and Compel Arbitration under the Federal Arbitration Act **(Doc. 9)** is hereby **GRANTED**; Plaintiff shall submit his claims to arbitration in accordance with the parties' agreement.

**IT IS SO ORDERED.**

_____
HON. DAVID HERRERA URIAS
UNITED STATES DISTRICT COURT